[Docket No. 1]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

NADINE MENENDEZ,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Civil No. 25-18179 (BRM)

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge**

## I.      INTRODUCTION

This matter comes before the Court upon Plaintiff Nadine Menendez's ("Plaintiff") Motion to Return Seized Property Pursuant to Federal Rule of Criminal Procedure 41(g). [Docket No. 1.] The Government has not yet filed a formal response to Plaintiff's motion. The Court has considered Plaintiff's submissions (which contain much of the Government's positions) without oral argument, pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiff's Motion to Return Seized Property will be **TRANSFERRED** to the United States District Court for the Southern District of New York.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the wife of former United States Senator Robert Menendez. [Docket No. 1 ("Compl.") at 2.] On June 15, 2022, the Government obtained warrants to

search Plaintiff's residence in Englewood Cliffs, New Jersey, and a safe deposit box located at a facility on Grand Avenue in Englewood, New Jersey, from Magistrate Judge Michael Hammer. [*Id.*] Both applications were supported by an affidavit from FBI Special Agent Mary Jo Corkery and were submitted in connection with an ongoing criminal investigation. [Docket No. 3-2.]  The warrants were executed the next day and various items were seized from Plaintiff's home, including cash, gold, jewelry, and various home appliances; all believed by the Government to be proceeds from an ongoing criminal enterprise. [Compl. at 2-3.] Plaintiff alleges that amongst the jewelry seized were pieces she inherited from her family. [*Id.*]

Following the investigation, Plaintiff was charged in the Southern District of New York with bribery, honest-services wire fraud, extortion under color of official right, obstruction of justice, and several conspiracy counts. *See U.S. v. Menendez*, Docket No. 1:23-cr-00490 (S.D.N.Y. Sept. 21, 2023). On April 21, 2025, a jury returned a guilty verdict on all counts. *Id.* The jewelry was not offered or received into evidence either at Plaintiff's trial or at the earlier 2024 trial of her co-defendants. [Compl. at 3.]

On September 11, 2025, judgment was entered against Plaintiff on all but one count, and she was sentenced to 54 months' imprisonment. *See Menendez*, Docket No. 1:23-cr-00490. A preliminary order of forfeiture identifying specific assets subject to forfeiture was also entered. *Id.* The preliminary order further imposed a money judgment in the amount of $922,188.10, and did not specifically identify Plaintiff's

jewelry as forfeitable property but rather provided that the value of forfeited property would be credited against the money judgment and that the Government could seek forfeiture of substitute assets pursuant to 21 U.S.C. § 853(p). *Id.;* [Compl. at 3.] Plaintiff then filed a notice of appeal to the United States Court of Appeals for the Second Circuit on September 23, 2025. *Id.*; *U.S. v. Menendez*, Docket No. 25-2322 (2d Cir. filed Sept. 25, 2025).

On September 25, 2025, Plaintiff, through counsel, requested the return of her non-contraband personal property not listed in the forfeiture order, including her jewelry. [Compl. at 4.] On September 26, 2025, Assistant United States Attorney Paul Monteleoni responded, stating that, in light of the record at both trials and the pendency of appeals from each conviction, the Government was "not in a position" to return the items and further asserting that the "seized valuables may be subject to forfeiture as substitute assets." [*Id.*; *Id.*, Ex. L at 2-3.] On October 23, 2025, Menendez sent a follow-up letter to the Government setting forth her legal position and authorities supporting her request that her jewelry be returned. [*Id.* at 4.] On October 26, 2025, Assistant United States Attorney Daniel Richenthal replied via email, stating that the Government disagreed with the assertions in her letter but offered no additional substantive explanation. [*Id.*]

Plaintiff then filed the present motion, seeking equitable relief in the form of an order directing the Government to return the Jewelry. [*Id.* at 5.] On December 8, 2025, the Court issued an Order in which it expressed its intent to exercise its discretion and

transfer the matter to the Southern District of New York. [Docket No. 6.] Plaintiff filed

an opposition on December 15, 2025. [Docket No. 7 ("Pl. Br.").] This Opinion follows.

## III.      LEGAL STANDARD

Venue is proper in "a judicial district in which any defendant resides, if all

defendants are residents of the State in which the district is located," 28 U.S.C. §

1391(b)(1), or "in which a substantial part of the events or omissions giving rise to the

claim occurred," 28 U.S.C. § 1391(b)(2).  A district court presiding over a case filed in

an improper venue "shall dismiss, or if it be in the interest of justice, transfer such case

to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

The Court, however, need not make a finding as to whether venue is improper. Rather,

the Court, mindful of the relevant public and private interests at stake, will transfer this

matter to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a).

Section 1404(a) provides that: "in the interest of justice, a district may transfer

any civil action to any other district or division where it might have been brought." "A

determination that transfer to another jurisdiction is appropriate represents an

'exercise of . . . structured discretion by trial judges appraising the practical

inconveniences posed to the litigants and the court should a particular action be

litigated in one forum rather than another.'" *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d

442, 450 (D.N.J. 1999) (quoting *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 479

(D.N.J. 1993) (quoting *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 632 (3d

Cir. 1989))). Thus, the district court "is vested with a large discretion" to determine

when transfer should be ordered "in the interest of justice," pursuant to Section

1404(a). *Solomon v. Continental Am. Life Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973).

In deciding whether to transfer an action under Section 1404(a), courts in the

Third Circuit consider both private and public interests, as delineated in *Jumara v. State*

*Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995). The private interest factors include:

> 1) the plaintiff's forum preference; 2) the defendant's forum
> preference; 3) where the claim arose; 4) the convenience of
> the parties as indicated by their relative physical and
> financial condition; 5) the convenience of the witnesses, but
> only to the extent they may be unavailable for trial in one of
> the fora; and 6) the location of books and records (similarly
> to the extent that they could not be produced in the
> alternative forum).

*Id.* at 879 (internal citations omitted). The relevant public interest factors include:

> 1) the enforceability of the judgment; 2) practical considerations  that
> could make the trial easy, expeditious, or inexpensive; 3) the relative
> administrative difficulty in the two fora resulting from court congestion;
> 4) the local interest in deciding local controversies at home; 5) the public
> policies of the fora; and 6) the familiarity of the trial judge with the
> applicable state law in diversity cases.

*Id.* at 879–80.

## IV.    ANALYSIS

In her response to this Court's December 8 Order, Plaintiff urges the Court to

find that the jewelry she seeks returned is not encompassed by the Civil Forfeiture

Order issued in the Southern District of New York. [Pl. Br. at 1.] The Court declines

to make any such findings. Despite no formal response having yet been filed by the Government, it represented via a September 26, 2025, email that the property in question does not fall within the scope of Rule 41(g), but rather qualifies as substitute assets subject to civil forfeiture to satisfy Plaintiff's outstanding money judgment. [Compl., Ex. L at 2-3.] While Plaintiff is correct that Rule 41(g) allows for a motion seeking the return of seized assets from the District from which it was seized, matters pertaining to a civil forfeiture can be brought before the Southern District of New York where the criminal prosecution occurred. Fed. R. Crim. P. 41(g); 21 U.S.C. § 881(j) (venue in forfeiture proceedings is proper in judicial district in which criminal prosecution was brought); *United States v. One 1978 Piper Cherokee Aircraft*, 91 F.3d 1204, 1207 (9th Cir. 1996). Therefore, the only issue presently before this Court is whether her motion should proceed within this District or the District from which the Civil Forfeiture was issued. The Court addresses all relevant factors below.

### A.    Private Interest Factors

In her response to the Court's December 8 Order, Plaintiff expressly states her preference that this matter proceed within this District. [Pl. Br. at 2.] However, this choice warrants less deference where the operative facts occurred outside of this District. *See, e.g.*, *Acosta v. Costa*, 2024 WL 1117585, at *2 (D.N.J. Mar. 14, 2024); *Goldstein v. MGM Grand Hotel & Casino*, 2015 WL 9918414, at *2 (D.N.J. Nov. 5, 2015) ("the plaintiff's choice of forum is discounted significantly where 'the case has little connection with the chosen forum,' and the nucleus of operative facts occurred

elsewhere.") (quoting *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 227–28 (D.N.J. 1996)).

Plaintiff argues that this factor still weighs in her favor as the operative facts arise not out of her criminal proceedings in the Southern District of New York, but the search executed in New Jersey. [Pl. Br. at 2.] However, Plaintiff fails to recognize the search warrant was executed because of the criminal proceedings in the Southern District of New York. [Docket No. 3-2.] It is indisputable that this matter arises out of her criminal matter that was adjudicated in the Southern District of New York and the relevant order of civil forfeiture was issued within the same district. [Docket No. 1.]

Turning to the second factor, Plaintiff argues that the Government has failed to express a countervailing interest as to the venue in which this matter is adjudicated. [Pl. Br. at 2.] Indeed, the Government has yet to file a response to Plaintiff's motion, but through the emails provided by Plaintiff, it is clear the Government intends that the jewelry which Plaintiff seeks to have returned is subject to the Civil Forfeiture Order entered in the Southern District of New York. [Compl., Ex. L at 2-3.]

Plaintiff next argues that the fourth factor – convenience of the parties – weighs heavily in her favor due to her residency within this District. [Pl. Br. at 2.] Again, the Court disagrees. While the Court recognizes Plaintiff's residency, it also takes judicial notice that she lives in Englewood Cliffs, New Jersey, which is a mere proverbial stone's throw from the Southern District of New York. Plaintiff also asks the Court to take

judicial notice of her "follow-up care" related to her breast cancer treatment in its consideration of this factor. [Pl. Br. at 2.] This Court is confident that the transferee Court will accommodate Plaintiff's needs for treatment.

While claiming this distance imposes a burden on her, Plaintiff claims no such burden will be placed upon the Government in defending this action within this District. [Pl. Br. at 2.] However, through Plaintiff's own submissions, the Assistant United States Attorneys with whom she has been corresponding regarding the return of her jewelry serve under the United States Attorney for the Southern District of New York, not New Jersey. [Compl., Ex. L.]

Similarly, Plaintiff claims the sixth factor is neutral as there are no books or records pertaining to this action in either fora. [Pl. Br. at 2, n.1.] This may be true but it is not a factor that tips this Cour't' analysis. The Court also notes that the jewelry in question is housed at the FBI's New York Field Office. [Docket No. 3-3.]. This factor too weighs in favor of transfer.

### A.    Public Interest Factors

In her argument that it would be more practical for the matter to continue within this District, Plaintiff recognizes that her criminal proceedings took place in the Southern District of New York, and her conviction is now being appealed in the United States Court of Appeals for the Second Circuit. [Pl. Br. at 2.] She claims, however, that this civil action is completely unrelated and instead only concerns the seizure of her jewelry. [*Id.*]

In this argument, Plaintiff again fails to acknowledge that the search and subsequent seizure of her jewelry that she wishes to contest was only authorized due to the FBI's ongoing criminal investigation, which culminated in her criminal charges in the Southern District of New York. *See Menendez*, Docket No. 1:23-cr-00490. In further support of transfer, the Circuit that is currently reviewing the findings of that case on appeal is different from the Circuit that guides this District, making it only practical that all actions concerning anything connected to her pending appeal remain within their jurisdiction. This continuity would also align with New York's legitimate local interest and prevailing public policy of continuity within their Courts. Therefore, in the interests of judicial economy and efficiency and in fairness to all parties, this Court exercises its discretion to transfer the matter to the United States District Court for the Southern District of New York. 21 U.S.C. § 881(j); 28 U.S.C. § 1404(a).

## V.    CONCLUSION

For the foregoing reasons, the matter shall be **TRANSFERRED** to the United States District Court for the Southern District of New York. An accompanying Order shall issue.

**December 19, 2025**
Date

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge